```
                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MAINE
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:22-cr-00086-JAW |
| | ) | |
| LUIS MARTINEZ | ) | |

**ORDER ON MOTION FOR DISCOVERY**

Concluding that the defendant's skepticism as to whether the government complied with its *Brady* and *Giglio* disclosure obligations is mostly about the way the disclosures were made, the Court upon examination determines that the government did in fact comply with its obligations and therefore dismisses without prejudice the defendant's motion for discovery.

**I.  BACKGROUND**

On May 24, 2022, the Government filed a criminal complaint against Luis Martinez, alleging that on February 8, 2022, Mr. Martinez "knowingly and intentionally possessed with intent to distribute a mixture or substance containing methamphetamine" in violation of 21 U.S.C. § 841(a)(1). *Crim. Compl.* (ECF No. 1). On July 7, 2022, a federal grand jury indicted Mr. Martinez on the following three counts: (1) "Possession with Intent to Distribute 50 Grams or More of a Mixture or Substance Containing Methamphetamine" on September 5, 2021 in violation of 21 U.S.C. § 841(a)(1); (2) "Possession with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing Methamphetamine" on February 8, 2022 in violation of 21 U.S.C. § 841(a)(1); and (3) Possession of a Firearm by a Felon on

February 8, 2022 in violation of 18 U.S.C. § 922(g)(1). *Indictment* at 1-2 (ECF No. 18). The indictment also contained two forfeiture allegations. *Id.* at 2-3.

On November 25, 2022, Mr. Martinez filed a motion to suppress evidence related to the traffic stop on September 5, 2021, which led to the charges in Count One of the indictment. *Def.'s First Mot. to Suppress* (ECF No. 49) (*Def.'s Suppress Mot.*).[1] On January 18, 2023, the Government responded to Mr. Martinez's motion to suppress, and on January 19, 2023, the Government filed additional attachments. *Gov't's Omnibus Resp. to Def.'s Mots. to Suppress* (ECF No. 60) (*Gov't's Suppress Opp'n*); *Attachs. 1-11* (ECF No. 61) (*Gov't's Suppress Attachs.*). On March 1, 2023, Mr. Martinez filed a reply to the Government's opposition. *Def.'s Reply to the Gov't's Omnibus Opp'n to Mots. to Suppress* (ECF No. 69) (*Def.'s Suppress Reply*). Over the Government's objection, the Court granted Mr. Martinez's motion for an evidentiary hearing, *Order* (ECF No. 70), and held the hearing on May 18, 2023. *Min. Entry* (ECF No. 84).

At the suppression hearing, Mr. Martinez's defense counsel asserted that the Government had failed to provide necessary *Brady/Giglio* discovery with respect to Sergeant Nathan Chisholm and sought sanctions. *Tr. of Proc.* at 4:10-9:5 (ECF No. 112) (*Suppression Tr.*). The Government responded that it had provided defense counsel with all proper *Giglio* material and, even though the material was just recently provided, the Government had complied with its discovery obligations. *Id.*

---

[1] Mr. Martinez filed a second motion to suppress on November 25, 2022 directed to the search and seizure on February 8, 2022 that led to Counts Two and Three of the indictment. *Def.'s Second Mot. to Suppress* (ECF No. 50). On May 18, 2023, Mr. Martinez orally withdrew the second motion to suppress. *Withdrawal of Mot.* (ECF No. 85).

at 9:9-10:19. The federal prosecutor stressed that the written reprimand turned over by the Government was not directed to Sergeant Chisholm's credibility but noted that the defense now had the report. *Id.* The Court allowed the suppression hearing to proceed, noting that Sergeant Chisholm had traveled a long distance to be present for the hearing and, if the discovery issues were not resolved after the hearing, the Court might require him to appear again. *Id.* at 12:9-14:6.

Following the suppression hearing, the Court held a conference of counsel on June 29, 2023 and set a schedule for briefing on the discovery issue. *Min. Entry* (ECF No. 89). Mr. Martinez filed a motion for discovery on July 24, 2023. *Mot. for Disc.* (ECF No. 100) (*Def.'s Mot.*). The Government responded in opposition on August 9, 2023. *Gov't's Resp. in Opp'n to Def.'s Mots. for Disc.* (ECF No. 103) (*Gov't's Opp'n*). Mr. Martinez filed a reply on August 16, 2023. *Reply to Gov't's Opp'n to Mot. for Disc.* (ECF No. 107) (*Def.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. Luis Martinez's Discovery Motion

After reviewing the background and the law underpinning the motion, Mr. Martinez focuses on "two primary concerns. First, the defense is concerned that the Government has not conducted its 'usual inquiries.' Second, the defense is concerned that even if the Government has since completed its 'usual inquiries' the Government has adopted an overly narrow interpretation of its *Brady*[2]/*Giglio*[3] obligations." *Def.'s Mot.* at 9.

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).
[3] *Giglio v. United States*, 405 U.S. 150 (1972).

3

Turning to the first issue, Mr. Martinez says that the "testimony at the suppression hearing indicated that, despite the numerous requests from the defense, the Government did not take any efforts to determine whether there may be *Brady/Giglio* materials until *after* the defense alerted them to the written reprimand." *Id.* (emphasis in original). Mr. Martinez expresses concern that despite its representations to the contrary, the Government did not make appropriate *Brady/Giglio* inquires before the suppression hearing. *Id.* at 10. Mr. Martinez is also skeptical as to whether the Government made appropriate inquiries with the Aroostook County Sheriff's Office regarding any reprimands or issues during Sergeant Chisholm's employment there or his prior employment for the town of Van Buren. *Id.* Mr. Martinez maintains that even after the suppression hearing, the Government refused to make any additional discovery inquiries, relying instead on its prior actions. *Id.*

As regards the second issue, Mr. Martinez argues that Sergeant Chisholm's credibility is critical to the resolution of the suppression issues and asks that the Government "provide any adverse findings as to Sergeant Chisholm's truthfulness and ability to accurately recall information, complaints of misconduct, and records of any criminal cases dismissed as a result of misconduct." *Id.* at 11.

B.  **The Government's Discovery Opposition**

In its opposition to the motion for discovery, the Government details its actions to comply with its *Brady/Giglio* disclosure obligations in this case, including its asserted compliance with Department of Justice discovery policy. *Gov't's Opp'n* at 2-

7. The Government acknowledges its duty to disclose information favorable to the accused and material to guilt or punishment. *Id.* at 7. It also concedes its obligation to produce information relevant to a witness's credibility. *Id.*

Preliminarily, the Government questions whether its disclosure obligations extend to suppression hearings as opposed to trials, *id.* at 8 n.5 (discussing circuit split), but the Government says that the Court need not resolve this issue because the Government turned over all potential impeachment evidence before the suppression hearing and is aware of no more. *Id.* at 8.

In addition, the Government contends that Mr. Martinez's request is a demand for general discovery, which the Government is not required to provide, and to the extent Mr. Martinez has requested specific information, he has not demonstrated his entitlement to it. *Id.* at 9.

Finally, to the extent the Government's disclosures were required, it maintains that the defense received the information before the suppression hearing and was able to use it in its examination of Sergeant Chisholm. *Id.* at 9-10. Therefore, the Government maintains that there has been no *Brady/Giglio* violation because its disclosures were timely. *Id.*

### C. Luis Martinez's Reply

In his reply, Mr. Martinez points out that the Government concedes it failed to make discovery inquiries until two days before the suppression hearing, even though it had received the defense's discovery requests months before. *Def.'s Reply* at 1. Based on the Government's response, Mr. Martinez acknowledges that "under other

5

circumstances there may not be reason for further inquiry." *Id.* at 2. But, here, based on the record, Mr. Martinez urges the Court to conclude that "the Government has not diligently investigated to ensure it has met its *Brady/Giglio* obligations." *Id.*

Mr. Martinez is openly skeptical about the Government's response because he says that he, not the Government, was the one who discovered the information about the reprimand and he, not the Government, noticed the fact that Sergeant Chisholm's body camera was turned off at points during the stop. *Id.* at 3-5. Mr. Martinez stresses that the obligation rests with the Government to make disclosures, not on a defendant to ferret out information that the Government should have provided. *See id.* at 4-5.

Next, pointing to Sergeant Chisholm's testimony that he was only asked by the Government whether he had ever been "written up," Mr. Martinez maintains that the Government's inquiries were too narrow to comply with its disclosure obligations. *Id.* at 5-6. Mr. Martinez further complains that the Government has not provided the language of the inquiry to the Aroostook County Sheriff's Office about Sergeant Chisholm. *Id.* at 5.

Finally, Mr. Martinez rejects the Government's position that his discovery request is general and insufficiently specific. *Id.* at 6.

### III. LEGAL PRINCIPLES[4]

---

[4] Federal Rule of Criminal Procedure 16 requires that, upon request from a defendant, the Government must provide the defendant with certain information. FED. R. CRIM. P. 16(a). There is no suggestion that the Government failed to comply with its Rule 16(a) discovery obligations in this case.

6

In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. In *Giglio v. United States*, 405 U.S. 150 (1972), the United States Supreme Court concluded that the jury was entitled to know information about a government witness that was relevant to the witness's credibility. *Id.* at 154-55. In *United States v. Bagley*, 473 U.S. 667 (1985), the Supreme Court clarified that the government's disclosure obligations include impeachment evidence. *Id.* at 676.

At the same time, in *Bagley*, the Supreme Court emphasized that a "prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at 675 (footnote omitted). Said differently, the government has "a duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011) (citing *Brady*, 373 U.S. at 87). "Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature and 'material' if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different." *Id.* (citing *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

In *Weatherford v. Bursey*, 429 U.S. 545 (1977), the Supreme Court emphasized that there "is no general constitutional right to discovery in a criminal case, and

*Brady* did not create one." *Id.* at 559; *see also Kaley v. United States*, 571 U.S. 320, 335 (2014) (quoting *Bursey*, 429 U.S. at 559-61). In practical terms, as the First Circuit has written, the "government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*. And at least where a defendant has made only a general request for *Brady* material, the government's decision about disclosure is ordinarily final—unless it emerges later that exculpatory evidence was not disclosed." *Prochilo*, 629 F.3d at 268 (citations omitted). The situation is different if the defendant has requested specific materials and the government maintains they are not discoverable; then the Court may perform an in camera review of the disputed materials. *Id.*

The government's disclosure obligations involve substantive and temporal elements. *United States v. De La Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2015) ("*Brady* also applies in cases where the Government delays disclosure of relevant evidence"). If the government has delayed disclosure, "the defendant further must show 'that the delay prevented defense counsel from using the disclosed material effectively in preparing and presenting the defendant's case.'" *Id.* (quoting *United States v. Van Anh*, 523 F.3d 43, 51 (1st Cir. 2008)).

The Government has affirmatively represented that it understands its *Brady* and *Giglio* obligations and will comply with its legal duties in a timely manner. *See United States v. Woodward*, 154 F. Supp. 2d 83, 88 (D. Me. 2001) ("The Court is satisfied that the Government understands its duty to disclose any exculpatory evidence in its possession in a manner useful to Defendants and timed to avoid any

8

delay at trial"), *abrogated on other grounds by Kyllo v. United States*, 533 U.S. 27 (2001). Moreover, the Government is aware that there are consequences if it fails to comply with its disclosure obligations. FED. R. CRIM. P. 5(f); *see United States v. Flores-Rivera*, 787 F.3d 1, 17-21 (1st Cir. 2015) (ordering a new trial based on withheld evidence).

## IV. DISCUSSION

The Court views this dispute as mostly a result of the way the Government's disclosure unfolded. Mr. Martinez filed the motion to suppress on November 25, 2022, focusing his argument on Sergeant Chisholm's handling of the traffic stop. *Def.'s Suppress Mot.* at 1-9. The Government responded on January 18, 2023, and in its filings, confirmed that Sergeant Chisholm would be the central government witness at the suppression hearing. *See Gov't's Suppress Opp'n* at 1-29; *Gov't's Suppress Attachs.* 1-11. When Mr. Martinez demanded discovery on January 5, 2023 and again on March 22, 2023, he would have reasonably expected that the Government would promptly respond, contact Sergeant Chisholm, and reveal any *Brady/Giglio* issues. On March 31, 2023, the Court scheduled the suppression hearing for May 18, 2023. *Notice of Hr'g on Mot.* (ECF No. 71). The Government then released discovery on May 4, 2023 but did not include any *Brady/Giglio* material. *Suppression Tr.* at 5:9-12; *Def.'s Mot.* at 2. Based on developments through May 4, 2023, the defense could have reasonably concluded that the Government had not produced *Brady/Giglio* material because there was none.

9

As it turned out, however, the federal prosecutor did not contact Sergeant Chisholm about *Brady/Giglio* issues until May 16, 2023, two days before the suppression hearing. *Gov't's Opp'n* at 2-3. By this time, defense counsel had learned from another defense lawyer that Sergeant Chisholm had received a written reprimand because he failed to turn on his body camera during an incident where he used deadly force. *Def.'s Mot.* at 2. On May 16, 2023, prior to the federal prosecutor contacting Sergeant Chisholm, defense counsel alerted the federal prosecutor to Sergeant Chisholm's reprimand and asked for a copy of the official reprimand letter. *Id.* at 2-3; *Gov't's Opp'n* at 2 ("On May 16, 2023, Counsel for the Defendant telephoned the Government and informed the Government that Counsel had become aware of a use of force incident involving Sergeant Chisholm and requested information regarding the incident. At the time of the phone call, the Government had not yet conducted an inquiry concerning potential Giglio materials with Sergeant Chisholm, nor sent a written inquiry to the Aroostook County Sheriff but intended to complete both prior to the suppression hearing"). Defense counsel expressed concern to the federal prosecutor that the Government had failed to comply with its discovery obligations. *Id.* at 3. The Government did not produce the written reprimand until 9:00 p.m. on May 17, 2023, the evening before the hearing. *Id.*

At the suppression hearing, when defense counsel raised the potential disclosure violation, the Assistant United States Attorney (AUSA) seemed to shrug it off, saying only that he had made the "usual inquiries." *Suppression Tr.* at 9:9-10. The AUSA stated that the Government "has turned over everything that it is aware

10

of that the Government believes is required to be turned over pursuant to Giglio." *Id.* at 9:10-12. The AUSA conceded that it "may have been preferable" if the Government had turned the material over sooner, but "we did turn it over. And I believe we've satisfied our obligation under Giglio." *Id.* 9:13-17. The AUSA maintained that the written reprimand was not proper *Giglio* material because whether Sergeant Chisholm had or had not turned on his body camera had no bearing on his credibility. *Id.* at 9:18-10:19.

Upon questioning by the Court, the AUSA reiterated his "usual inquiries" response and represented that the Government "essentially asks each witness, does an inquiry with each witness regarding, you know, certain information that might need to be disclosed pursuant to Giglio." *Id.* at 11:16-12:1. The AUSA went on:

> One of those questions has to do with things that might have come up at suppression hearings, and if we - - anything arises that we need to look into we look into it and make a determination as to whether it needs to be turned over. And we've gone through that process here. We've also inquired with each testifying witness's employing agency, and we haven't found anything that we need to turn over.

*Id.* at 12:1-8.

If the AUSA had been more forthcoming at the suppression hearing about his efforts to comply with the Government's disclosure obligations and the timing of those efforts, as later detailed in the Government's opposition, defense counsel's suspicions might not have been aroused. As later disclosed, upon learning from defense counsel of Sergeant Chisholm's reprimand, the federal prosecutor contacted Sergeant Chisholm, requested information about the reprimand, made a written inquiry of the Aroostook County Sheriff's Office to identify potential impeachment material, located

11

a three-page Maine State Attorney General report dated January 27, 2023 concerning a July 31, 2022 incident involving Sergeant Chisholm's use of force, discovered that the Aroostook County Sheriff's Office had issued a written reprimand to Sergeant Chisholm for his failure to activate his body camera during the use of deadly force incident, and obtained a copy of the written reprimand. *Gov't's Opp'n* at 2-4. The federal prosecutor also supplied to defense counsel the Attorney General's report on May 16, 2023 and the Aroostook County Sheriff's Office's written reprimand on May 17, 2023, just before the May 18, 2023 suppression hearing. *Id.* at 3-4.

The Court is not clear why the AUSA seemed cagey about his efforts to comply with the Government's disclosure obligations. It may be, as the AUSA has maintained, that he believed that *Brady* and *Giglio* do not apply to suppression hearings, *id.* at 8 n. 5 (collecting cases on the applicability of *Brady* and *Giglio* to suppression hearings), or, as the AUSA maintained at the suppression hearing, that he believed the written reprimand was not properly considered *Giglio* material because whether Sergeant Chisholm had or had not turned on his body camera had no bearing on his credibility. *Suppression Tr.* at 9:18-10:19.

Discounting the way the disclosure was made answers Mr. Martinez's concerns about the AUSA's "usual inquiries" phrase. Citing *Kyles v. Whitley*, 514 U.S. 419 (1995), Mr. Martinez properly maintains that the prosecutor has "a duty to learn of any favorable evidence known to the others acting on the government's behalf" in the case, including the police. *Def.'s Mot.* at 8 (citing *Kyles*, 514 U.S. at 437-38); *see United States v. Ramos-González*, 775 F.3d 483, 494 (1st Cir. 2015) ("Moreover, prosecutors

12

in every case -- even in a district with a burdensome and congested criminal docket, such as Puerto Rico -- have a duty to learn of evidence favorable to the accused that is 'known to the others acting on the government's behalf in the case, including the police.'") (quoting *Kyles*, 514 U.S. at 437).  But here, the federal prosecutor complied with *Kyles* and *Ramos-González* by asking the Aroostook County Sheriff's Office and the Maine State Attorney General's Office about *Brady* and *Giglio* material related to Sergeant Chisholm and producing that material.

Finally, the AUSA represented that he complied with Department of Justice (DOJ) disclosure policies.  *Gov't's Opp'n* at 2.  DOJ policy requires a federal prosecutor to disclose material exculpatory and impeachment information from "the prosecution team," which the policy defines as "federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant."  U.S. Dep't of Just., Just. Manual § 9-5.001(B)(2)  (2020),  https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings.  Based on the representations the Government has made regarding the actions it took prior to the suppression hearing, the Court resolves that the AUSA's cryptic reference to the "usual inquiries" was in fact a reference to the proper range of the Government's disclosure obligations under *Brady* and *Giglio*.

The sole possible departure from the DOJ policy concerns whether the disclosure was made in a timely manner.  The DOJ policy requires disclosure of exculpatory material as soon as reasonably possible after discovery and impeachment material at a reasonable time before trial.  U.S. Dep't of Just., Just. Manual § 9-5.002,

Step Three, (B) Timing. But the AUSA did quickly disclose what he learned; he just started the discovery process late. Furthermore, Sergeant Chisholm revealed that the AUSA may have earlier attempted to obtain the information and Sergeant Chisholm's employer had not responded. *Suppression Tr.* at 98:12-16 ("[The AUSA] had requested my chief provide any of this documentation and he hadn't heard back from the chief. And so he asked that I reach out to my chief, Joey Seeley, and see if that information could be sent"). In any event, the defense had access to the material before the suppression hearing and was able to question Sergeant Chisholm about it at the hearing.

Having resolved that the Government's past disclosures both pre- and post-suppression hearing complied with its disclosure obligations, the Court turns to Mr. Martinez's argument that he is entitled to greater discovery. Under *Brady*, the Government must "disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011). The Government "is primarily responsible for deciding what evidence it must disclose to the defendant," and "at least where a defendant has made only a general request for *Brady* material, the government's decision about disclosure is ordinarily final—unless it emerges later that exculpatory evidence was not disclosed." *Prochilo*, 629 F.3d at 68. A defendant can overcome the presumed finality of the Government's decision by requesting "specific materials that the government maintains are not discoverable under *Brady*." *Id.* If the defendant can "articulate with some specificity what evidence he hopes to find in the requested materials, why

14

he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material," the court can conduct an in camera review of the disputed materials. *Id.* at 268-69.

Here, Mr. Martinez has requested "any adverse findings as to Sergeant Chisholm's truthfulness and ability to accurately recall information, complaints of misconduct, and records of any criminal cases dismissed as a result of misconduct." *Def.'s Mot.* at 11. Mr. Martinez contends that the outcome of his Motion to Suppress "hinges on the credibility of [Sergeant Chisholm]," and so "any information pertaining to the veracity of his account is material." *Id.* In response, the Government argues that Mr. Martinez's request is "a general request rather than [a] request for specific items of impeachment material" and represents that it "is not aware of nor in possession of any of these materials." *Gov't's Opp'n* at 9.

In the Court's view, there are two ways to interpret Mr. Martinez's request; however, neither interpretation entitles him to additional discovery at this time. Mr. Martinez's request is aimed at obtaining specific categories of documents. This request is more specific than a general demand for *Brady* material but more general than a demand for specific documents. To the extent that Mr. Martinez's request can be construed as a general demand for *Brady* material, based on the record before it, the Court has accepted the Government's representation that it has complied with its *Brady/Giglio* disclosure obligations consistent with applicable caselaw and DOJ policy.

15

To the extent that Mr. Martinez's request can be construed as a demand for specific materials, Mr. Martinez has not identified any materials with enough specificity to enable the Court to conduct an in camera review. Such a review presupposes that the defense has identified a document possessed by the Government that the defense contends is discoverable and the Government says is not. *See Prochilo*, 629 F.3d at 269 (finding no basis for an in camera review due to the defendant's failure to identify "specific materials he wanted the court to inspect in camera"). The Court does not know how it can perform an in camera review of an unidentified document. Should Mr. Martinez make the requisite showing to justify an in camera review in the future, the Court remains open to conducting such a review consistent with *Prochilo*.

Mr. Martinez is also looking for an order compelling the Government to further investigate potentially discoverable documents. In his reply, Mr. Martinez asks the Court to order the Government to produce "records of any complaints against [Sergeant Chisholm] for similar conduct as alleged in his case, and any criminal complaints that were dismissed due to officer misconduct." *Def.'s Reply* at 6. But the Government has already represented that it asked for and supplied records of any complaints against Sergeant Chisholm and is not aware of any other responsive documents. Apart from asking the officer, the officer's employer, and the state Attorney General about potential *Brady/Giglio* material, the Court is not convinced in the circumstances of this case that the law requires a federal prosecutor to do more. For example, if Mr. Martinez is asking that the federal prosecutor do a records search

16

of publicly available information on the criminal docket, Mr. Martinez has not provided any authority for the Court to order a federal prosecutor to search for records a defendant could himself obtain.

As Mr. Martinez acknowledged, "under other circumstances there may not be reason for further inquiry" but the defense's discovery motion has been prompted by its view that the Government failed to "diligently investigate[] to ensure it has met its *Brady/Giglio* obligations." *Def.'s Reply* at 2. Here, the AUSA has acknowledged his disclosure obligations under *Brady* and *Giglio* and his duty to comply with the applicable DOJ policies requiring disclosure. Even though the Court understands why the defense was and is skeptical, upon examination, the Court concludes that the AUSA complied with the Government's *Brady/Giglio* duties. Of course, if Mr. Martinez wishes to pursue a future alleged disclosure violation, he is free to do so and therefore the Court is dismissing his motion without prejudice.

## V. CONCLUSION

The Court DISMISSES without prejudice Luis Martinez's Motion for Discovery (ECF No. 100).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2023